| | |
|---|---|
| 1 | MATTHEW R. COWAN (S.B. #281114) |
| | mcowan@omm.com |
| 2 | O'MELVENY & MYERS LLP |
| | 400 South Hope Street, 19th Floor |
| 3 | Los Angeles, California 90071-2899 |
| | Telephone: (213) 430-6000 |
| 4 | Facsimile: (213) 430-6407 |
| 5 | *Attorney for Non-Party Lark Park* |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* MOTION TO QUASH THIRD-PARTY SUBPOENA<br><br>in the matter of<br><br>FRANKEL, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.,<br><br>*Defendants*. | Misc. Case No.<br><br>Underlying Litigation:<br><br>*Frankel, et al. v. Regents of the University of California, et al.*, No. 2:24-CV-4702-MCS (C.D. Cal.)<br><br>**NON-PARTY LARK PARK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH THIRD-PARTY SUBPOENA**<br><br>Judge: TBD<br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD |

**MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1
RELEVANT BACKGROUND ................................................................................................ 3
    A.    The Board of Regents of the University of California ............................................ 3
    B.    Procedural History ................................................................................................... 3
LEGAL STANDARD ............................................................................................................... 5
STATEMENT OF JURISDICTION ......................................................................................... 6
ARGUMENT ............................................................................................................................ 6
    A.    The Subpoena Fails To Specify A Place of Compliance ........................................ 6
    B.    The Apex Doctrine Shields Regent Park From Deposition ................................... 7
    C.    Deposing Regent Park Would Impose An Undue Burden ..................................... 8
    D.    Regent Park Engages In Privileged Communications With The Regents .............. 9
CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
  282 F.R.D. 259 (N.D. Cal. 2012) .................................................................................. 7

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
  2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ............................................................. 7, 8

*Chavez v. Allstate Northbrook Indem. Co.*,
  2025 WL 885055 (S.D. Cal. Jan. 31, 2025) .................................................................. 7

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
  2015 WL 9434782 (E.D. Cal. Dec. 24, 2015) .............................................................. 9

*Doe v. Regents of Univ. of Cal.*,
  891 F.3d 1147 (9th Cir. 2018) ...................................................................................... 3

*Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*,
  2022 WL 2820667 (S.D. Cal. July 18, 2022) ............................................................... 6

*Frankel, et al. v. Regents of Univ. of Cal., et al.*,
  No. 2:24-CV-4702-MCS (C.D. Cal.) ........................................................................ 1, 3

*FTC v. Warner Commc'ns, Inc.*,
  742 F.2d 1156 (9th Cir. 1984) ...................................................................................... 9

*Green v. Baca*,
  226 F.R.D. 624, *order clarified*, 2005 WL 283361 (C.D. Cal. Jan. 13, 2005) ........... 6

*HI.Q, Inc. v. ZeetoGroup, LLC*,
  2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) ............................................................ 6

*Jackson v. Hayakawa*,
  682 F.2d 1344 (9th Cir. 1982) ...................................................................................... 3

*Jackson v. Woodford*,
  2007 WL 2023551 (S.D. Cal. July 11, 2007) ............................................................... 7

*N. Pacifica, LLC v. City of Pacifica*,
  274 F. Supp. 2d 1118 (N.D. Cal. 2003) ..................................................................... 10

*Prima Air Grp. LLC v. Prero*,
  2025 WL 1416230 (C.D. Cal. Mar. 12, 2025) .............................................................. 6

*Roblox Corp. v. WowWee Grp. Ltd.*,
  2023 WL 5507176 (N.D. Cal. Aug. 25, 2023) ............................................................. 8

*Sherman v. Regents of Univ. of Cal.*,
  2022 WL 875652 (N.D. Cal. Mar. 24, 2022) ............................................................. 10

*Touma v. Gen. Couns. of Regents*,
  2017 WL 10541005 (C.D. Cal. Dec. 13, 2017) ........................................................... 3

*U.S. EEOC v. Pinal Cnty.*,
  714 F. Supp. 2d 1073 (S.D. Cal. 2010) ...................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Unigene Lab'ys, Inc. v. Apotex, Inc.*,
   2007 WL 2972931 (N.D. Cal. Oct. 10, 2007).......................................................... 10

*United States v. Chen*,
   99 F.3d 1495 (9th Cir. 1996).................................................................................. 10

*United States v. Google LLC*,
   690 F. Supp. 3d 1011 (N.D. Cal. 2023) .................................................................... 6

*Vaughn v. Regents of Univ. of Cal.*,
   504 F. Supp. 1349 (E.D. Cal. 1981).......................................................................... 3

*Vervain, LLC v. Kingston Tech. Co.*,
   2025 WL 885599 (N.D. Cal. Mar. 21, 2025) ............................................................ 6

**RULES**

Fed. R. Civ. P. 26(b)(2)(C)(i)........................................................................................ 8

Fed. R. Civ. P. 45(a)(1)(A)(iii) ..................................................................................... 6

Fed. R. Civ. P. 45(d)(3)................................................................................................. 6

Fed. R. Civ. P. 45(d)(3)(A) ........................................................................................... 6

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..................................................................................... 8

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. IX, § 9(f) .............................................................................................. 3

**INTRODUCTION**

Almost a year ago, Plaintiffs brought a lawsuit against The Regents of the University of California ("UC" or the "University") and six individual defendants (collectively, Defendants) based on the University's response to a protest encampment erected by third parties on the campus of the University of California, Los Angeles ("UCLA").[1] Plaintiffs—three UCLA students and one faculty member—have already sought summary judgment on their principal claim without deposing a single witness. The parties have been meeting and conferring over the proper scope of the discovery that remains, with a discovery conference set to take place before Central District Magistrate Judge Donahue next week. But Plaintiffs are attempting to circumvent that process with an improper subpoena to depose a non-party witness this Friday, May 30, implicating the very discoverability issue the Magistrate Judge will hear that day.

Defendants timely served their Responses & Objections ("R&Os") to Plaintiffs' requests for production on January 27 and February 10, 2025. In their R&Os, Defendants explicitly objected to designating any of the 26 individual members of the University of California Board of Regents (the "Board") as document custodians. Plaintiffs did not request to meet and confer on Defendants' R&Os until April 1, and took no specific positions until May 1. On May 17, *before* noticing any other depositions or even raising with the Magistrate Judge the dispute regarding the inclusion of individual Regents as document custodians, Plaintiffs served a deposition subpoena on Non-Party Regent Lark Park ("Regent Park"). Regent Park is not a party to the case. She is not an administrator at UCLA, and Plaintiffs have offered no basis to conclude that she possesses information about the events at issue that cannot be obtained from alternative sources. Nevertheless, Plaintiffs noticed Regent Park's deposition to occur *prior* to the hearing before the Magistrate Judge and have refused to postpone it *unless* Defendants consent to designating two individual Regents as document custodians. In other words, Plaintiffs are not using this deposition

---

[1] Regent Park has also concurrently filed a notice of related case relating this case to the underlying matter, *Frankel, et al. v. Regents of the University of California, et al.*, Case No. 2:24-CV-4702-MCS (C.D. Cal.). The defendants in the underlying case include the University and the administrators named in the lawsuit: Michael V. Drake, President of the University of California; Julio Frenk, Chancellor, University of California, Los Angeles; Darnell Hunt, Executive Vice-President and Provost; Michael Beck, Administrative Vice Chancellor; Monroe Gorden, Jr., Vice Chancellor; and Steve Lurie, Assistant Vice Chancellor.

to develop the factual record, but rather to attempt to extract discovery concessions from Defendants by harrying a high-ranking Board member.  The Court should quash this procedurally and substantively improper subpoena for four reasons.

*First*, the subpoena does not specify a place of compliance.  Instead, it merely says that the deposition is to occur at a "mutually agreeable place, including remotely."  Cowan Decl. ¶ 12 (Ex. A).  As courts have held time and again, a vague reference to an agreeable location does not meet Rule 45's specificity requirements and cannot be enforced.  And needless to say, Plaintiffs could have conferred with Defendants on the proper place of compliance before serving a subpoena on Regent Park at nearly 11:00 PM on a Saturday.

*Second*, as a member of the Board, Regent Park is at the "apex" of the University and should not be deposed unless Plaintiffs can show (i) that she has unique knowledge about the alleged facts, *and* (ii) that this knowledge cannot be obtained through less intrusive discovery methods.  Plaintiffs meet neither condition here.  Regent Park has no unique knowledge of UCLA's response to the encampment—she does not make day-to-day decisions about campus operations.  And Plaintiffs have not even tried to obtain the information they seek by deposing *any* UC administrators who actually oversaw UCLA's response to the encampment.  Indeed, the parties are still litigating the scope of document discovery and Plaintiffs have not conducted *any* depositions at all.

*Third*, deposing Regent Park would impose an undue and far-reaching burden.  If the Court forces Regent Park to appear for a deposition despite her lack of day-to-day involvement in the underlying events, then she and other Regents could be subjected to depositions whenever the University is sued—no matter how removed from the alleged facts they might be.  That burden is particularly troubling here because Regent Park likely cannot offer any legally relevant information that Plaintiffs could not obtain from the UC administrators that Defendants have already offered as custodians.

*Fourth*, even if Regent Park could offer legally relevant information about the Regents' communications, much of that information would be privileged under both the deliberative process and attorney-client privileges.

Accordingly, Regent Park respectfully requests that this Court enter an order quashing

Plaintiffs' subpoena for her to appear at a deposition.

## RELEVANT BACKGROUND

**A.    The Board of Regents of the University of California**

The California Constitution establishes that The Regents of the University of California—the real party in interest in all suits against components of UC—is a public corporation and arm of the state. *See* Cal. Const. art. IX, § 9(f). Accordingly, UC is considered to be a "public corporation" that "has the power to sue and be sued." *Vaughn v. Regents of Univ. of Cal.*, 504 F. Supp. 1349, 1353 (E.D. Cal. 1981).[2] As a legal matter, UC is separate from the Board of Regents and from the 26 individual Regents who sit on the Board. *See Doe v. Regents of Univ. of Cal.*, 891 F.3d 1147, 1154 n.6 (9th Cir. 2018) (claim against "the Regents" does not extend to "individual state official[s]").

**B.    Procedural History**

In spring 2024, students across the country created encampments to protest the war between Israel and Hamas. When tents were erected at the UCLA campus on April 25, 2024, UCLA faced a challenging situation. The encampment had to be disbanded; the harder question was how to do so safely. Consistent with long-standing UC guidance, UCLA adopted a tiered approach: First, it attempted de-escalation, while actively seeking to protect its community from danger. When that approach proved untenable, it enlisted the aid of law enforcement, leading to the arrest of more than 200 people and the end of the encampment on May 2, 2024.

On June 5, 2024, Plaintiffs sued the University and six UCLA administrators based principally on their belief that UCLA had affirmatively assisted discriminatory conduct by the protesters in the encampment.[3] ECF 1.[4] On May 21, 2025, the Court granted Defendants' motion for judgment on the pleadings, effectively dismissing all claims for damages against the individual

---

[2] *See also Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) (the Board is considered "government entity" with "independent status" (quotations omitted)); *Touma v. Gen. Couns. of Regents*, 2017 WL 10541005, at *6 (C.D. Cal. Dec. 13, 2017) (the Board is not "person" amenable "to suit under Section 1983").

[3] The original complaint was brought by three UCLA student plaintiffs. On October 22, 2024, Plaintiffs filed an amended complaint adding a fourth plaintiff, a UCLA faculty member. ECF 101.

[4] Citations to the ECF refer to docket entries in the underlying action *Frankel, et al. v. Regents of the University of California, et al.*, No. 2:24-CV-4702-MCS (C.D. Cal.).

1    defendants. ECF 173. The claims against UC and the individual defendants in their official
2    capacity remain set for trial.

3    Discovery has proceeded slowly. Plaintiffs served their first set of requests for production
4    ("RFPs") on November 27, 2024, and Defendants responded to them on January 27, 2025, after
5    Plaintiffs proposed a mutual 30-day extension of the response deadline. Cowan Decl. ¶ 3. Plaintiffs
6    served their second set of requests for production on February 10, 2025, which Defendants
7    responded to on March 12. *Id.* ¶ 4. Plaintiffs waited until March 27—a full two months after
8    Defendants responded to Plaintiffs' first RFPs—to reach out for an initial meet-and-confer, which
9    occurred on April 1. *Id.* ¶ 5. Defendants memorialized the parties' discussion in an April 10 letter.
10   *Id.* Plaintiffs then waited another three weeks, until May 1, to respond. *Id.*

11   To date, Defendants have committed to a fulsome production of responsive documents from
12   11 custodians, including each of the UC administrators sued as individual defendants, three
13   members of the UCLA Police Department, and two additional UCLA administrators not named as
14   defendants (UCLA's dean of students and assistant vice chancellor for civil rights). *Id.* ¶ 6. These
15   are the key leaders who oversaw operational decision-making at UCLA during the encampment,
16   meaning the individuals who made decisions that *actually* impacted Plaintiffs and their claims. *Id.*
17   Defendants have commenced a rolling production from these custodians, which they intend to
18   complete substantially by the end of June. *Id.*

19   But Plaintiffs believe they are entitled to discovery from *more* custodians—far more. With
20   just three months of fact discovery remaining, Plaintiffs demanded in their May 1 letter that
21   Defendants *quadruple* the number of custodians Defendants initially offered (eight) by adding 17
22   of the 18 appointed individual Regents, 15 administrators, and 2 individuals from the UCLA Police
23   Department ("UCLA PD"). *Id.* ¶ 7; *see* ECF 114 (ordering parties to complete fact discovery by
24   August 2025). This, despite that no individual Regent is a named defendant in the underlying action
25   and that the complaint is devoid of a single allegation concerning any action taken by an individual
26   Regent. *See generally* ECF 101. Nor have Plaintiffs located a single case—and Defendants are
27   aware of none—in which a court compelled an individual Regent to serve as a document custodian
28   in a lawsuit against the University. Defendants explained all this to Plaintiffs in a May 13 letter.

1  Cowan Decl. ¶ 8.

2  Four days later—late in the evening on Saturday, May 17—Plaintiffs responded with an ultimatum: Defendants could add individual Regents as document custodians or Plaintiffs would depose Regent Lark Park on Friday, May 30. *Id.* ¶ 9 & Ex. B.  Plaintiffs said that they "anticipate" that Regent Park will be able to provide information about "(i) the UC Regents' knowledge and communications concerning the events alleged in Plaintiffs' First Amended Complaint [("FAC")] and (ii) the means by which the Regents communicate among themselves, with UCLA administrators, with UCLA PD, and with LAPD." *Id.* Ex. B.  Plaintiffs did not explain why they believe Regent Park, in particular, possesses any unique knowledge about UCLA's response to the encampment. *Id.* ¶ 9.  The deposition subpoena itself provides no other details, nor does it specify a place of compliance.  Rather, the subpoena says that the deposition shall occur at a "mutually agreeable place, including remotely." *Id.* Ex. A.  In their May 17 letter, Plaintiffs also indicated that they would seek a discovery conference with the Magistrate Judge in the underlying action to resolve any remaining disputes. *Id.* ¶ 9 & Ex. B.

Recognizing that—by Plaintiffs' own logic—the outcome of the forthcoming discovery conference before the Magistrate Judge is likely to bear on whether a deposition of Regent Park is necessary and/or proper, Defendants attempted to meet and confer with Plaintiffs about an orderly resolution of the dispute over the subpoena.  On May 23, Defendants asked Plaintiffs to postpone the deposition until after the Magistrate Judge decides the proper scope of document custodians, but Plaintiffs refused. *Id.* ¶ 10.  Instead, on May 25, Plaintiffs indicated they would only be willing to postpone Regent Park's deposition if Defendants agree to designate two other individual Regents as document custodians without the benefit of the Magistrate Judge's ruling on that precise issue—confirming that the harassing subpoena of Regent Park is merely an attempt to gain leverage in the pending dispute over whether discovery pertaining to individual Regents is proper at all. *Id.* ¶ 11.

## LEGAL STANDARD

Federal Rule 45 provides that a court must quash a subpoena that "subjects a person to undue burden" or requires "disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A).  Courts must also quash subpoenas for lack of specificity when they do not instruct

5  MEMORANDUM OF POINTS AND
   AUTHORITIES ISO MOTION TO QUASH

1  the would-be deponent to appear at "a specified time and place." *Id*. 45(a)(1)(A)(iii). And while
2  the burden of persuasion for a motion to quash is on the moving party, the party who issued the
3  subpoena must show that the "information sought is relevant and material to the allegations and
4  claims at issue in the proceedings." *Green v. Baca*, 226 F.R.D. 624, 654, *order clarified*, 2005 WL
5  283361 (C.D. Cal. Jan. 13, 2005).

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this motion because "the district where compliance is required" is this District. Fed. R. Civ. P. 45(d)(3). Regent Park is a non-party who resides in Sacramento County in California. Cowan Decl. ¶ 14; *see Vervain, LLC v. Kingston Tech. Co.*, 2025 WL 885599, at *2 (N.D. Cal. Mar. 21, 2025) (motion to quash "may be filed in the district where the subpoenaed party resides"); *HI.Q, Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *8 (S.D. Cal. Nov. 29, 2022) (finding "place of compliance" where person sought to be deposed was located).

## ARGUMENT

### A.  The Subpoena Fails To Specify A Place of Compliance

A subpoena commands a person to "attend and testify" at "a specified time and place." Fed. R. Civ. P. 45(a)(1)(A)(iii). A "subpoena that does not specify . . . the place of compliance [] is facially invalid." *United States v. Google LLC*, 690 F. Supp. 3d 1011, 1035-36 (N.D. Cal. 2023). That is the case here: the subpoena does not include a place for the deposition but instead asks Regent Park to testify at "[a] mutually agreeable place, including remotely." Cowan Decl. Ex. A. Neither a "mutually agreeable place" nor a remote video conference satisfies Rule 45's requirement for "a specified . . . place." California courts in the post-Covid era have consistently made clear that a "zoom video conference" is "not a place." *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *7 (S.D. Cal. July 18, 2022) ("A 'ZOOM VIDEO CONFERENCE,' however, is not a place."); *see, e.g.*, *Prima Air Grp. LLC v. Prero*, 2025 WL 1416230, at *4 (C.D. Cal. Mar. 12, 2025) (collecting cases and holding that a subpoena that lists the place of compliance as "remotely via videoconference (zoom)" failed to designate a valid place of compliance); *Chavez v. Allstate Northbrook Indem. Co.*, 2025 WL 885055, at *5 n.4 (S.D. Cal. Jan. 31, 2025) (similar).

1  Nor is a "mutually agreeable place" sufficiently specific. *See Jackson v. Woodford*, 2007 WL
2  2023551, at *2 (S.D. Cal. July 11, 2007) (deposition subpoena noticed for "any place" on a
3  particular date is invalid). Accordingly, the Court should quash the subpoena because it does not
4  provide a specific place for Regent Park to appear and testify.

### B. The Apex Doctrine Shields Regent Park From Deposition

Regent Park is a member of the Board of Regents—UC's highest governing board—and her connection to the facts of this case is tangential at best. Regent Park did not personally participate in the key events at issue in the complaint, nor does she possess relevant information that cannot be obtained from other sources. This renders Plaintiffs' demand to depose Regent Park premature, at best, and unnecessary and abusive, at worst.

As courts regularly recognize, forcing high-ranking officials like Regent Park to testify in depositions raises "tremendous potential for abuse and harassment." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quotations omitted). That is because high-ranking officers do not ordinarily possess firsthand knowledge of the facts relevant to a case; officers at the pinnacle of an organizational hierarchy typically delegate matters to lower-ranking employees and then glean information from those subordinates. *See id.*; *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Where a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper." (quotations omitted)). Accordingly, parties seeking to depose high-ranking officials must show: (1) "the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case" and (2) "the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple*, 282 F.R.D. at 263.

Plaintiffs cannot meet either requirement. Regent Park has no unique or superior knowledge about the facts in this case. Like every other Regent, Regent Park is neither named as an individual defendant nor even mentioned in the FAC. That makes sense: the people who directed and supervised UCLA's response to the encampment were *not* individual Regents but instead various campus administrators, whom Defendants have already designated as custodians. Accordingly, there's no basis to conclude that Regent Park—who does not make day-to-day decisions about

7                                              MEMORANDUM OF POINTS AND
                                               AUTHORITIES ISO MOTION TO QUASH

1  campus operations—has "unique" or "superior" knowledge about UCLA's response to the
2  encampment. Likewise, there is no reason to conclude Regent Park has unique knowledge about
3  how the Board communicates with UC administrators and law enforcement—the UC
4  administrators whom Defendants have designated as custodians could speak to those
5  communications just as easily.

6  Plaintiffs also have not exhausted less intrusive discovery methods—including, for
7  instance, propounding interrogatories to or taking the depositions of UC administrators who
8  oversaw UCLA's response to the encampment. *See Celerity, Inc.*, 2007 WL 205067, at *5 (granting
9  protective order "pending the taking of less intrusive methods of discovery, including
10 interrogatories and depositions of lower-level Celerity employees"). Indeed, Plaintiffs have yet to
11 serve *any* other deposition notices. Nor have Plaintiffs explained why they cannot obtain the
12 information they seek through documents that Defendants have produced—including those of
13 UCLA Chancellor Gene Block and UC President Michael Drake—or through the minutes from the
14 Board's open session meetings. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the
15 frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably
16 cumulative or duplicative, or can be obtained from some other source that is more convenient, less
17 burdensome, or less expensive[.]"); *e.g.*, *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 5507176,
18 at *3 (N.D. Cal. Aug. 25, 2023) (denying plaintiffs' request to compel defendants to add company
19 executive as custodian when plaintiffs "made no showing that [he] ha[d] relevant information,
20 much less that he ha[d] information that would not be discoverable through the other custodians
21 named by defendants," and plaintiffs "only speculate[d]" that executive "must have relevant
22 information").

23  **C.  Deposing Regent Park Would Impose An Undue Burden**

24 Even setting aside the apex doctrine, the Court should quash the subpoena because it
25 imposes an "undue burden" on Regent Park. Fed. R. Civ. P. 45(d)(3)(A)(iv). A subpoena imposes
26 an "undue burden" when compliance imposes "a burden" without "good reason." *City of Sterling*
27 *Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 9434782, at *2 (E.D. Cal. Dec. 24,
28 2015). Here, deposing Regent Park would not only force *her* to forgo competing obligations in

8   MEMORANDUM OF POINTS AND
    AUTHORITIES ISO MOTION TO QUASH

order to appear on short notice (an obvious burden) but would also lay the groundwork for a dangerous and far-reaching burden on other Regents, now and in the future. UC is a party to hundreds of pending lawsuits at any given time. Thus, forcing Regent Park to testify in this case could open the door to individual Regents being subjected "to a deposition every time a case involving [UC] arises." *Id*. (granting motion to quash deposition subpoena of insurance commissioner because "requiring the Insurance Commissioner to be subjected to a deposition every time a case involving a California insurer arises" would be unduly burdensome).

And there is no "good reason" to impose this burden on Regent Park. Again, there is no reason to believe that Regent Park's testimony will provide Plaintiffs unique, relevant information: she and the other Regents do not make day-to-day operational decisions for all ten UC campuses; those decisions are made by UC administrators, primarily at the campus level. Not surprisingly, then, Regent Park is mentioned nowhere in the FAC. *See id.* ("Without some showing that a deposition of [a non-party] is likely to lead to some admissible evidence, the deposition of this non-party is an undue burden."). Because forcing Regent Park to testify would impose a large burden—both now and in future cases—with little benefit, the Court should quash the subpoena.

**D.    Regent Park Engages In Privileged Communications With The Regents**

The University has already agreed to produce minutes from the Regents' open session meetings, but to the extent Plaintiffs seek to depose Regent Park about discussions in *non-public* meetings, at least some of those communications may be protected by the deliberative process and attorney-client privileges.

*Deliberate Process Privilege*. The deliberative process privilege allows the government to withhold documents or prevent testimony that reflects "advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The purpose of the privilege is "to promote frank and independent discussion among those responsible for making government decisions and also to protect against premature disclosure of proposed . . . policies or decisions." *Id.* (citations omitted); *compare Sherman v. Regents of Univ. of Cal.*, 2022 WL 875652, at *4 (N.D. Cal. Mar. 24, 2022) (evaluating Regents' assertion of privilege but

ultimately rejecting it on timeliness grounds).  Here, to the extent Regent Park communicated with other Regents, campus administrators, or law enforcement about how UC should make policy changes in response to the encampment, some of those communications may have been "predecisional," i.e., "generated before the adoption of a policy or decision." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003) (quotations omitted).  And many may also have been "deliberative": they would reflect the Regents' "opinions, recommendations, or advice about" how the University should change policies to prevent future encampments on its campuses. *Id.* (quotations omitted); *see also U.S. EEOC v. Pinal Cnty.*, 714 F. Supp. 2d 1073, 1078 (S.D. Cal. 2010) (granting motion to quash deposition of EEOC representative where testimony "would undoubtedly require revealing information about the EEOC's deliberative process, such as its analysis of the information obtained, its witness credibility evaluations, its evaluation of the evidence, the personal opinions of EEOC representatives, and the decision-making process of the EEOC").

*Attorney-Client Privilege*.  Because attorneys typically attend the Regents' closed session meetings where legal issues are to be discussed and provide legal advice, Regent Park also could not testify about some of the discussions that occur in such meetings without violating the attorney-client privilege.  *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation."); *Unigene Lab'ys, Inc. v. Apotex, Inc.*, 2007 WL 2972931, at *3 (N.D. Cal. Oct. 10, 2007) (granting motion to quash deposition subpoena of non-party because deposition would be "futile since any information relevant to the controversy . . . falls within the protection of the attorney-client privilege").

For these reasons, as well, forcing Regent Park to sit for a deposition would not be a productive use of time.

## CONCLUSION

For the above reasons, this Court should quash Plaintiffs' subpoena for the deposition of Regent Lark Park.

Dated:   May 28, 2025

O'MELVENY & MYERS LLP

By: */s/ Matthew R. Cowan*
       Matthew R. Cowan
*Attorney for Non-Party Lark Park*